---

**RECORD NO. 13-1588**

---

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

CODY A. HEARN; CHRISTOPHER A. HEARN, individually and
as Personal Representative of the Estate of Henry C. Hearn,

*Plaintiff-Appellant,*

v.

LANCASTER COUNTY, et al.,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

---

**BRIEF OF APPELLEES**

---

Andrew F. Lindemann
James M. Davis, Jr.
DAVIDSON & LINDEMANN, P.A.
Post Office Box 8568
Columbia, South Carolina 29202
(803) 806-8222

*Counsel for Appellees*

# TABLE OF CONTENTS

Table of Authorities ........................................................................... ii

Jurisdictional Statement ................................................................... 1

Statement of the Case ....................................................................... 2

Statement of Facts ............................................................................ 3

Summary of Arguments .................................................................... 8

Arguments ........................................................................................ 10

    Standard of Review ................................................................... 10

    I.    The district court correctly ruled that the Appellees Small, Whitaker, Kirkley and Snipes were not deliberately indifferent to the Decedent's serious medical needs. ..................................... 10

        A.    Deliberate Indifference Standard ....................................... 11

        B.    Application to Each Appellee ............................................ 15

            1.    Deputy Donovan Small ............................................ 15

            2.    Sergeant James Whitaker ........................................ 18

            3.    Lieutenant Chuck Kirkley ........................................ 20

            4.    Sergeant Mitzi Snipes ............................................. 22

    II.    As an additional sustaining ground, the Appellees Small, Whitaker, Kirkley, and Snipes in their individual capacities are entitled to *Harlow* qualified immunity. .......................................... 25

Conclusion ........................................................................................ 34

Certificate of Service

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Creighton,*
    483 U.S. 635 (1987). .................................................................. 29

*Baynard v. Malone,*
    268 F.3d 228 (4th Cir. 2001). .................................................. 14

*Brown v. Harris,*
    240 F.3d 383 (4th Cir. 2001). .......................................... 14, 18

*Brown v. Middleton,*
    362 Fed. Appx. 340 (4th Cir. 2010). ...................................... 14

*Buffington v. Baltimore County,*
    913 F.2d 113 (4th Cir. 1990). .................................................. 24

*Clem v. Corbeau,*
    284 F.3d 543 (4th Cir. 2002). .................................................. 29

*Doe ex rel. Johnson v. South Carolina Dept. of Social Services,*
    597 F.3d 163 (4th Cir. 2010). .................................................. 32

*Edwards v. City of Goldsboro,*
    178 F.3d 231 (4th Cir. 1999). .................................................. 29

*Edwards v. Gilbert,*
    867 F.2d 1271 (11th Cir. 1989). ............................................ 30

*Estelle v. Gamble,*
    429 U.S. 97 (1976). .................................................................. 11

*Farmer v. Brennan,*
    511 U.S. 825 (1994). ........................................................ passim

*Figg v. Schroeder*,
  312 F.3d 625 (4th Cir. 2002). .................................................................. 29

*Gomez v. Atkins*,
  296 F.3d 253 (4th Cir. 2002). .............................................................. 28

*Gordon v. Kidd,*
  971 F.2d 1087 (4th Cir. 1992). ............................................ 11, 23, 28, 30

*Grayson v. Peed*,
  195 F.3d 692 (4th Cir. 1999). .............................................................. 11

*Hardwick ex rel. Hardwick v. Heyward*,
  711 F.3d 426 (4th Cir. 2013). .............................................................. 10

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982). ................................................................................ 26

*Hogan v. Carter*,
  85 F.3d 1113 (4th Cir. 1996). .............................................................. 32

*Jones v. Wellham*,
  104 F.3d 620 (4th Cir. 1997). .............................................................. 14

*Maciariello v. Sumner*,
  973 F.2d 295 (4th Cir. 1992). .............................................................. 26

*Owens v. Lott*,
  372 F.3d 267 (4th Cir. 2004). .............................................................. 27

*Parrish v. Cleveland*,
  372 F.3d 294 (4th Cir. 2004). .......................................................... passim

*Rich v. Bruce*,
  129 F.3d 336 (4th Cir. 1997). .............................................................. 14

*Roberts v. City of Troy*,
  773 F.2d 720 (6th Cir. 1985). .............................................................. 23

*Rowland v. Perry*,
    41 F.3d 167 (4th Cir. 1994). .................................................................. 27

*Sanford v. Stiles*,
    456 F.3d 298 (3rd Cir. 2006). ................................................................. 17

*Saucier v. Katz*,
    533 U.S. 194 (2001). ........................................................................ 27, 29

*Smith v. Reddy*,
    101 F.3d 351 (4th Cir. 1996). ................................................................ 28

*Swanson v. Powers*,
    937 F.2d 965 (4th Cir. 1991). ................................................................ 32

*Torchinsky v. Siwinski*,
    942 F.2d 257 (4th Cir. 1991). ................................................................ 26

*Wilson v. Layne*,
    526 U.S. 603 (1999). ........................................................................... 32

*Wright v. Collins*,
    766 F.2d 841(4th Cir. 1985). ................................................................ 19

*Young v. City of Mount Ranier,*
    238 F.3d 567 (4th Cir. 2001). ................................................................ 11

## **JURISDICTIONAL STATEMENT**

The Appellees do not dispute the Appellants' statement that this is a timely appeal from a final order.

## STATEMENT OF THE CASE

The Appellants Cody Hearn and Christopher Hearn are the co-Personal Representatives of the Estate of Henry C. Hearn. The Appellants brought this action pursuant to 42 U.S.C. § 1983 alleging that the Appellees violated the substantive due process rights of Henry C. Hearn ("Decedent") following his arrest and incarceration on September 13, 2009. The Appellees include Lancaster County, Lancaster County Sheriff Barry S. Faile, Debbie Horne (who was the Jail Administrator), as well as Lieutenant Chuck Kirkley, Sergeant Mitzi Snipes, Sergeant James Whitaker and Deputy Donovan Small, each of whom are Sheriff's Deputies. In addition, the Appellants brought state law claims under the South Carolina Tort Claims Act for wrongful death and survival.

On February 12, 2013, the Appellees moved for summary judgment on several grounds. The issues for summary judgment were fully briefed by the parties. On May 1, 2013, United States District Judge Richard Mark Gergel issued an order granting the Appellees summary judgment as to all federal constitutional claims. The state law tort claims were remanded to the Lancaster County Court of Common Pleas from which this action had been removed. (J.A. 336-347).

This appeal followed.

## STATEMENT OF FACTS

Stated in a light most favorable to the Appellants, the evidence in the record shows as follows:

This action arises from events occurring on September 13, 2009. On that date, the Appellants' decedent, Henry C. Hearn ("Decedent") hanged himself in the Lancaster County Detention Center a few hours after he was arrested by the Appellee Donovan Small, who is employed as a deputy with the Sheriff of Lancaster County.

In the days prior to his arrest, the Decedent had been living in the woods behind his ex-wife's home. (J.A. 84-89). Additionally, the Decedent had a stormy relationship with his ex-wife (Darcie Hearn), and she had called law enforcement on him on several occasions. (J.A. 76-83).

On September 13, 2009, Deputy Small was dispatched to the home of Darcie Hearn. (J.A. 106). Ms. Hearn testified that she called law enforcement because she was concerned for the safety of herself and her daughter. (J.A. 95-99). Ms. Hearn complained to Deputy Small that she believed the Decedent had been entering her home and possibly taking items, including food, cigarettes, sheets, and liquor. She also explained that the Decedent had previously been charged with criminal domestic violence following an altercation with her and that she feared for her safety. (J.A. 80-83, 95-99). Deputy Small proceeded into the woods behind Ms. Hearn's home to

investigate. (J.A. 106). Although he was unable to locate the Decedent at that time, he did discover a campsite where the Decedent was apparently living. (J.A. 106, 135-136).

At this same time, Appellee James Whitaker responded to the home of Ms. Hearn to assist Deputy Small. (J.A. 108, 183). When Sergeant Whitaker arrived on the scene, he was directed to the woods behind the home by Ms. Hearn. (J.A. 183). Sergeant Whitaker walked into the woods where Deputy Small was and also observed the campsite. (J.A. 183). Among the items that Deputy Small discovered in the campsite was a yellow notepad with a four page note apparently written to Ms. Hearn from the Decedent. (J.A. 107-108, 219-223). Deputy Small testified that while he did not read the notepad in detail, he did skim over its contents and interpreted the note as an attempt by the Decedent to play on the emotions of Ms. Hearn. (J.A. 108). Similarly, Sergeant Whitaker skimmed the first page of the notepad briefly and confirmed it was personal property of the Decedent. (J.A. 185-186). Sergeant Whitaker then received another call from dispatch, and he left the area. (J.A. 191).

Unable to locate the Decedent, Deputy Small left the scene and drove to a nearby store. (J.A. 109). Before leaving the area, Deputy Small took the notepad to Darcie Hearn and told her it appeared to be a note to her. (J.A. 90-94). Sometime later that day, Deputy Small received another call that the Decedent had returned to

the scene, and he walked through the woods and found the Decedent. (J.A. 109-110). After consulting with the Appellee Chuck Kirkley, who was Small's supervisor, Deputy Small determined that probable cause existed to arrest the Decedent for criminal domestic violence. (J.A. 111-112, 145-146). Prior to leaving the scene, Deputy Small went back to Darcie Hearn's home to retrieve the note in case it was needed as evidence. Darcie Hearn had read the note but never expressed any concern regarding the note to Deputy Small. (J.A. 90-94).

As Deputy Small was transporting the Decedent to the Lancaster County Detention Center, Small engaged in casual conversation with the Decedent about numerous topics, including the notepad that he had discovered. The Decedent indicated to Deputy Small that the note to his ex-wife was a good-bye note as he was planning on moving away from Lancaster. This confirmed what Deputy Small had thought when he read the note. (J.A. 112-116). Deputy Small also indicated that the Decedent was at all times talking and acting normally. (J.A. 110-112, 121). At no point did it appear to Deputy Small that the notepad that he had discovered may have been a suicide note, nor did he ever become concerned that the Decedent may be a threat to himself. (J.A. 108, 115-116, 120-121).

Deputy Small transported the Decedent to the Detention Center and turned the Decedent over to the Appellee Mitzi Snipes for booking. (J.A. 117-118). Deputy Small then spoke with his supervisor, Lieutenant Chuck Kirkley, to determine if the

5

notepad should be considered evidence of an additional burglary charge or if it should be considered personal property of the Decedent.  (J.A. 114, 123-124). Lieutenant Kirkley skimmed the note, agreed it appeared to be personal property of the Decedent, and advised Small to give it to the Detention Center staff to place in the Decedent's property.  (J.A. 146-149).  Deputy Small took the notepad to the Detention Center and gave it to Sergeant Snipes to place in the Decedent's property. (J.A. 123-124).  Lieutenant Kirkley had no personal interaction with the Decedent.

After leaving the Detention Center, Deputy Small first went back to Darcie Hearn's residence to obtain a statement from her.  Deputy Small then travelled to a wooded area where the Decedent claimed he had left some of his belongings in order to help the Decedent so he would have all of his belongings with him when he left town after getting out of jail. These belongings also contained notes that were not discovered until after the Decedent died.  (J.A. 124-130).

Once Deputy Small transported the Decedent to the Detention Center, Sergeant Mitzi Snipes was responsible for booking him into the Detention Center. (J.A. 158).  The booking process included medical screening consisting of a series of approved questions relating to an incoming detainee's medical history and condition. (J.A. 158-159).  During the booking process, Sergeant Snipes asked the Decedent if he had any suicidal thoughts or intentions to hurt himself, to which the Decedent said "no." (J.A. 160).  The Decedent never expressed any suicidal thoughts or ideations to

Sergeant Snipes, nor did he appear to be sad or depressed.  The Decedent gave no indication of a problem.  (J.A. 158-160).  In addition, Deputy Small never expressed any concern to Sergeant Snipes about the Decedent's mental status or any possible suicidal ideations.  (J.A. 151, 161, 167).  Moreover, even though Deputy Small provided Defendant Snipes with the Decedent's notepad, she only flipped through the notepad to check it for contraband.  She did not read any of the writings it contained.  (J.A. 160-161, 167).

## SUMMARY OF ARGUMENTS

The Appellants, as co-Personal Representatives of the Estate of Henry C. Hearn, allege that the Appellees Small, Whitaker, Kirkley and Snipes were each deliberately indifferent to the Decedent's serious medical needs at the time of his arrest and incarceration at the Lancaster County Detention Center. The district court, however, disagreed and granted summary judgment to each Appellee.

In arguing that summary judgment was granted in error, the Appellants rely exclusively on the four-page note that was discovered by Deputy Donovan Small as evidence that the Decedent was suicidal and the Appellees actually knew he was suicidal. The Appellants describe the note authored by the Decedent as an "obvious suicide note." The district court disagreed and concluded that "the note is insufficient to create an inference of deliberate indifference." (J.A. 342).

The district court correctly concluded that the Decedent's note did not include an explicit threat of suicide. (J.A. 341). The district court, in fact, pointed out that the Appellants' own suicide expert concluded that the note was subject to interpretation. (J.A. 207). This is particularly true when the note is viewed, as required, without the benefit of hindsight. Ultimately, Deputy Small questioned the Decedent about the note and was told that the Decedent was planning to leave Lancaster to travel to the West and this was a good-bye note to his ex-wife and child.

(J.A. 113)  The Decedent also told Small that he was "fine" and had no medical issues.  (J.A. 113).  This was confirmed later by the Appellee Mitzi Snipes who, as part of the intake process at the Detention Center, also asked the Decedent whether he had any suicidal thoughts or was planning to hurt himself, and the Decedent responded in the negative.  (J.A. 298).  The Decedent never expressed any suicidal thoughts or ideations to Sergeant Snipes, nor did he appear to be sad or depressed. (J.A. 158-160).

The Appellees, who reviewed the note, testified that they did not construe the note as a "suicide note" nor as setting forth a plan or threat to commit suicide.[1]  The district court thus concluded that the note itself did not support a claim that the Appellees Small, Whitaker, Kirkley and Snipes actually knew of and disregarded a substantial risk of serious injury to the Decedent.  That ruling should be affirmed on appeal.  In the alternative, the Appellees are at the very least entitled to qualified immunity, an issue that the district court did not find it necessary to reach.

---

[1]    The Appellee Snipes never even skimmed the note and was never told of its contents.

# ARGUMENTS

# STANDARD OF REVIEW

The Fourth Circuit reviews a grant of summary judgment *de novo* and applies the same legal standards as the district court. *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

## I. The district court correctly ruled that the Appellees Small, Whitaker, Kirkley and Snipes were not deliberately indifferent to the Decedent's serious medical needs.

The Appellants allege that the Appellees Small, Whitaker, Kirkley and Snipes violated the Decedent's substantive due process rights as guaranteed under the Fourteenth Amendment. Specifically, the Appellants allege that these Appellees were deliberately indifferent to the Decedent's serious medical needs at the time of his arrest and incarceration at the Lancaster County Detention Center. The Appellants claim that these Appellees were deliberately indifferent to the Defendant's suicidal plans and failed to take precautionary measures to prevent his suicide.[2]

---

[2] The district court granted summary judgment to all Appellees on all federal claims. The Appellants, however, have only appealed the rulings in favor of the Appellees

## A.    Deliberate Indifference Standard

An official's deliberate indifference to the serious medical needs of a pretrial detainee violates the Due Process Clause of the Fourteenth Amendment.  *Young v. City of Mount Ranier,* 238 F.3d 567, 575 (4th Cir. 2001).[3]  Serious medical needs may include serious psychological needs such as a desire to commit suicide. *Gordon v. Kidd,* 971 F.2d 1087 (4th Cir. 1992).

As this Court explained in *Parrish v. Cleveland*, 372 F.3d 294 (4th Cir. 2004), "[d]eliberate indifference is a very high standard – a showing of mere negligence will not meet it."  372 F.3d at 302, *citing Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).  The seminal case on the deliberate indifference standard is *Farmer v. Brennan*, 511 U.S. 825 (1994).  In *Farmer*, the Supreme Court explained that an officer is not deliberately indifferent "unless the official knows of

---

Small, Whitaker, Kirkley and Snipes in their individual capacities.  The Appellants have not appealed the dismissal of the federal claims against Lancaster County, Sheriff Barry S. Faile, and Debbie Horne.  The district court's dismissal of those Appellees therefore should be affirmed.  In addition, in the district court, the Appellants abandoned their claims against the individual Defendants in their official capacities.

[3]    The United States Supreme Court has held that an official's deliberate indifference to the serious medical needs of a prisoner is a violation of the Eighth Amendment of the United States Constitution.  *Estelle v. Gamble,* 429 U.S. 97, 103–05 (1976). The Eighth Amendment prohibits the cruel and unusual punishment of prisoners.  Based upon the Decedent's status as a pretrial detainee at the time of the alleged incident, his rights would be protected under the Fourteenth Amendment rather than the Eighth Amendment.  However, he would be entitled to the same protection under the Fourteenth Amendment as a convicted prisoner would receive under the Eighth Amendment. *Young,* 238 F.3d at 575.

and disregards an excessive risk to inmate health or safety." 511 U.S. at 837. The Court held that deliberate indifference requires that "the official must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must draw the inference." *Id.*

Citing *Farmer*, this Court has explained that "[a]n officer is deliberately indifferent to a substantial risk of harm to a detainee when that officer knows of and disregards the risk." *Parrish*, 372 F.3d at 302. In other words, "[d]eliberate indifference requires a showing that the defendants *actually knew of* and *disregarded* a substantial risk of serious injury to the detainee or that they *actually knew of* and *ignored* a detainee's serious need for medical care." *Id.* (Emphasis in original).

Thus, two requirements exist for a showing of deliberate indifference in the context of a jail suicide case: (1) an officer's actual knowledge that the detainee poses a risk of suicide and (2) the officer's disregarding of that risk. "[T]he evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers *should have* recognized it; they actually must have perceived the risk." *Parrish*, 372 F.3d at 303. This Court further explained:

> [T]o cross the threshold from mere negligence to conscience-shocking deliberate indifference, the officers not only must recognize the facts giving rise to the risk, but they also must draw the additional causal inference.

> Thus, to the extent the officers recognized any risk at all, we are concerned with the risk as they perceived it, not as a reasonable officer under the circumstances should have perceived it, and not as it now may be perceived enlightened by the benefit of hindsight.

*Parrish*, 372 F.3d at 303-304. Thus, the failure to identify a risk that should have been perceived is not sufficient to establish deliberate indifference. Likewise, there is no liability for deliberate indifference where a defendant "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Farmer*, 511 U.S. at 844.

The Appellant contends that in granting summary judgment the district court misapplied the applicable law governing the first prong of the deliberate indifference test. The Appellant contends that the district court did not consider that a showing of actual knowledge of the risk of suicide may be made by showing that the risk is obvious. The Appellant's reading of the district court order is incorrect. In its order, the district court cites *Farmer* and plainly states that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." (J.A. 340). The district court then further cites to this Court's decision in *Parrish* as follows: "But, it is not enough that a reasonable officer *would have* found the risk to be obvious. Rather, the risk of injury must be 'so obvious that the fact-finder could conclude that the [officer] *did* know of it because he could not have failed to know of it.'" *Parrish*, 372 F.3d at

303, *citing Rich v. Bruce*, 129 F.3d 336, 339-340 (4th Cir. 1997). (Emphasis in original). (J.A. 340). As this Court has similarly stated, "if an officer fails to act in the face of an obvious risk of which he should have known, but did not, the officer has not violated the Eighth or Fourteenth Amendments." *Brown v. Middleton*, 362 Fed. Appx. 340, 344 (4th Cir. 2010).

Furthermore, proof that an officer had actual knowledge of a substantial risk is not in and of itself enough to show deliberate indifference. As the Court recognized in *Farmer*, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Actions that in hindsight are "unfortunate" or even "imprudent" will not suffice to show deliberate indifference. *Baynard v. Malone*, 268 F.3d 228, 236 (4th Cir. 2001) *citing Jones v. Wellham*, 104 F.3d 620, 627 (4th Cir. 1997). If an official responds reasonably to a risk to an inmate's safety, he or she cannot be found to have acted with a sufficiently culpable state of mind. *Brown v. Harris*, 240 F.3d 383, 389 (4th Cir. 2001). "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Farmer*, 511 U.S. at 845. Put simply, an official's duty under the Fourteenth Amendment is to ensure "reasonable safety," not to guarantee a person's safety. *Id*.

14

**B.** **Application to Each Appellee**

**1.** **Deputy Donovan Small**

The district court granted summary judgment to Deputy Donovan Small, who was the arresting officer. As they did in the district court, the Appellants rely exclusively on the four-page note that was discovered by Deputy Small as evidence that the Decedent was suicidal and the Appellees actually knew he was suicidal. The Appellants describe the note authored by the Decedent as an "obvious suicide note." The district court disagreed and concluded that "the note is insufficient to create an inference of deliberate indifference." (J.A. 342).

As the district court found, the note contains no explicit threat of suicide. (J.A. 341). Even the Appellants' suicide expert, Ronald W. Maris, Ph.D. testified that "it's open to interpretation about what this note means" and that "people don't often say what they mean." (J.A. 207). Deputy Small questioned the Decedent about the note and was told that he was leaving Lancaster to travel to the West and this was a good-bye note to his ex-wife and child. (J.A. 113) The Decedent also told Small that he was "fine" and had no medical issues. (J.A. 113). This was confirmed later by the Appellee Mitzi Snipes who, as part of the intake process at the Detention Center, also asked the Decedent whether he had any suicidal thoughts or was planning to hurt himself, and the Decedent responded in the negative. (J.A. 298). The district court

thus concluded that the note itself did not make the risk of suicide an obvious risk sufficient to give rise to a finding of deliberate indifference.

Furthermore, there is no evidence that Deputy Small subjectively recognized that a substantial risk of harm to the Decedent existed. While Deputy Small briefly skimmed over the notepad that he found among the Decedent's property, he simply believed the note was an attempt to play on Ms. Hearn's emotions, specifically an attempt "to make her feel bad." (J.A. 107-108). This interpretation was confirmed to Small when he asked the Decedent about the note. (J.A. 108). Deputy Small testified that the note did not appear to him to be a suicide note. (J.A. 108).[4] He also provided the note to Darcie Hearn, and she never expressed any concerns about it. (J.A. 90-94).

Moreover, even if the Appellants could establish that Deputy Small subjectively recognized a substantial risk to the Decedent, which is denied, they still cannot establish that Small's response to that alleged risk amounted to deliberate indifference. As the Supreme Court noted in *Farmer*, officials may be found free from liability if they responded reasonably to a perceived risk. *Farmer*, 511 U.S. at

---

[4]    In their brief, the Appellants challenge Deputy Small's testimony that he merely skimmed the note by arguing that Small actually "quotes" from the note in his incident report and thus must have read it with some depth. *See*, Appellants' Brief, p. 20. Contrary to the Appellants' characterization, Small does not include a verbatim quote in his report. (J.A. 135-136). Rather, in two short sentences, Small summarizes what he believed was the meaning or import of the note. Significantly, that two sentence summary supports Small's testimony that he believed the note was saying goodbye to his ex-wife and daughter because he was leaving town given that winter was coming and no one was providing him any assistance. Small's summary does not describe the message as a threat to commit suicide.

844. An officer's response to a perceived risk must be more than merely negligent or simply unreasonable to amount to a finding of deliberate indifference. *Parrish*, 372 F.3d 306-307. "If a negligent response were sufficient to show deliberate indifference, the Supreme Court's explicit decision in Farmer to incorporate the subjective recklessness standard of culpability from the criminal law would be effectively negated." *Parrish*, 372 F.3d at 307. Even though he did not perceive any substantial risk to the Decedent, Deputy Small nevertheless inquired to the Decedent as to the purpose of the note as part of his investigation and in accordance with good police practice and training. (J.A. 113). Therefore, even if the Decedent's note were to be construed as a possible "suicide note," it cannot be maintained that Small simply ignored the risk. The record reflects that Small spoke with the Decedent and made a conscious judgment that he appeared normal. This judgment was affirmed by the fact that the Decedent had a viable explanation for the note, coupled with the Decedent's seemingly normal demeanor. (J.A. 113).[5]

While the Appellants claim that Small should have responded differently, this claim would be at most a claim that Defendant Small was negligent, which is insufficient to support a claim of deliberate indifference. *Parrish*, 372 F.3d at 307. The reasonableness of Defendant Small's response is not affected by the fact that

---

[5]    *See*, *Sanford v. Stiles*, 456 F.3d 298, 311 (3rd Cir. 2006) (finding that it could not be said that a school counselor disregarded any risk to a student after the counselor discovered a note by the student which referenced a desire to kill himself where the counselor promptly spoke with the student and determined that the student did not have any active suicidal ideations or plans).

there were additional precautions that he perhaps could have taken. *Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001) (explaining that even if officer "took less action that he ... should have ... that does not ... negate the reasonableness of his response"). In sum, the grant of summary judgment in favor of Deputy Small was correct and should be affirmed.

### 2.    Sergeant James Whitaker

The district court also granted summary judgment in favor of Sergeant James Whitaker. Sergeant Whitaker's role was minor and brief in duration. In fact, it is undisputed that Whitaker never had any personal interaction with the Decedent.

On September 13, 2009, Sergeant Whitaker responded to the home of Darcie Hearn to assist Deputy Small, who was already on the scene. (J.A. 183). When Whitaker arrived on the scene, he was directed to the woods behind the home by Ms. Hearn. (J.A. 183). He walked into the woods where Deputy Small was and observed what seemed to be a campsite. (J.A. 183). Deputy Small handed Whitaker the notepad that he had found among the items at the site. (J.A. 184). Whitaker "skimmed over" or "looked over" the notepad, but he did not read its contents. (J.A. 184-185). Whitaker then received another call, and he left. (J.A. 191). He did not respond back to the scene with Deputy Small when the Decedent returned sometime

later, and he was not involved in the arrest or detention of the Decedent.  (J.A. 108, 191).

The district court granted summary judgment to Sergeant Whitaker because "the note is insufficient to create an inference of deliberate indifference."  (J.A. 342). The Appellants' claim against Whitaker is premised entirely on the allegation that he read the note and took no action.  The district court also granted summary judgment because "Whitaker had no direct involvement with Mr. Hearn's arrest."  (J.A. 342).

The Appellants agree that they must show that Sergeant Whitaker "acted personally" to deprive the Decedent of his constitutional rights.  *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985).   They also concede that Sergeant Whitaker had no personal interaction with the Decedent.  Although he responded to the initial call to assist Deputy Small, it is uncontroverted that the Decedent was not present at the scene at that time and that Whitaker was not involved later in the arrest or transportation to the Detention Center.

Based on these uncontroverted facts, the Appellants have made no showing that Sergeant Whitaker was deliberately indifferent to the Decedent's constitutional rights.   They have not shown that Whitaker had a subjective awareness that the Decedent posed a risk of suicide.  The Appellants contend in a conclusive manner that Whitaker could have directed the Decedent away from the jail and to the hospital for treatment, but they fail to show that Whitaker even had knowledge that the

Decedent was later arrested and placed in the Detention Center. In short, the Appellants fail to show any involvement by Whitaker that could give rise to any liability for deliberate indifference. Consequently, summary judgment in Whitaker's favor should be affirmed.

### 3.    Lieutenant Chuck Kirkley

The district court granted summary judgment for Lieutenant Chuck Kirkley on as similar basis as Sergeant Whitaker. The district court found that Kirkley "never saw Mr. Hearn and can only be said to have read the note." (J.A. 342). The district court found, as before, that "the note is insufficient to create an inference of deliberate indifference." (J.A. 342.). The district court also ruled that Kirkley had not "acted personally" in depriving the Decedent of any rights. (J.A. 342).

It is undisputed that Lieutenant Kirkley had no personal interaction with the Decedent. On September 13, 2009, after finding the Decedent in the woods, Deputy Small, as a young deputy, called Kirkley for guidance in determining whether sufficient grounds existed to arrest the Decedent for criminal domestic violence. (J.A. 145-146). After the Decedent was booked into the Detention Center, Deputy Small approached Kirkley and asked if the notepad should be considered evidence in the charges that were going to be brought against the Decedent for criminal domestic violence. (J.A. 114, 124, 132). Lieutenant Kirkley looked over the Decedent's

notepad and advised Small it appeared to be personal property of the Decedent. (J.A. 146-148). Kirkley explained in his deposition that he did not interpret the note as a suicide note but rather saw the note as an attempt of the Decedent to play on the sympathies of his ex-wife. (J.A. 147-148).[6]

The district court correctly granted summary judgment to Lieutenant Kirkley. Kirkley did not recognize any significant risk of harm to the Decedent based upon his review of the Decedent's note. Instead, he understood the note to be an attempt by the Decedent to play on his ex-wife's emotions. Therefore, because Kirkley did not subjectively recognize a risk of harm to the Decedent, the Appellants cannot establish that he acted with deliberate indifference towards the Decedent's medical needs. The summary judgment in his favor should be affirmed.

---

[6]     The Appellants contend that Lieutenant Kirkley "appears to agree with Plaintiffs' counsel [sic] suggestion that the only reasonable way to interpret the notepad was as a suicide note." *See*, Appellants' Brief, p. 29. That is not a fair reading of Kirkley's testimony. When asked whether there was another reasonable way to interpret the note other than as a suicide note, Kirkley responded, "Not to – not to us it wasn't. And we –". (J.A. 149). Appellants' counsel then cut off the witness' response and, over the objection of Appellees' counsel, changed the question to ask:

> Q.     No other reasonable way to interpret it as a – other than as
>         a suicide note?
>
> A.     No.

(J.A. 149). It is clear that, when the exchange in read in context, Kirkley is confirming his belief that the note was not read to be a suicide note. He is not changing his earlier testimony, including his response to the very previous question. It is also noteworthy that the Appellants had to change the question in their brief to even offer the interpretation that they did.

### 4.    Sergeant Mitzi Snipes

The district court also granted summary judgment to Sergeant Mitzi Snipes, who was the booking officer at the Detention Center.  The district court found that Snipes merely "flipped through" the note during the booking.  (J.A. 343).  The district court also found that Snipes questioned the Decedent whether he was suicidal or was thinking of hurting himself, to which he responded in the negative.  (J.A. 343).  Based thereon, the district court concluded that Appellants "have failed to create a genuine issue of fact whether Defendant Snipes was deliberately indifferent to Mr. Hearn's serious medical needs."  (J.A. 343).

The record reflects that on September 13, 2009, Sergeant Snipes was responsible for booking the Decedent into the Detention Center.  (J.A. 158).  The booking process includes medical screening consisting of a series of questions relating to an incoming detainee's medical history and condition.  (J.A. 158-160).  It is uncontested that Sergeant Snipes performed a medical screening of the Decedent upon his arrival at the Detention Center.  (J.A. 158-160, 177).  At or around 6:00 PM on September 13, 2009, Snipes left the jail.  (J.A. 159).  She received a phone call later that evening informing her of the Decedent's suicide.  (J.A. 159).

During the booking process, Sergeant Snipes asked the Decedent if he had any suicidal thoughts or intentions to hurt himself, to which the Decedent said "no."  (J.A. 160).   The Decedent never expressed any suicidal thoughts or ideations to Sergeant

Snipes, nor did he appear to be sad or depressed.  The Decedent gave no indication of a problem.  (J.A. 158-160).  In addition, Deputy Small never expressed any concern to Sergeant Snipes about the Decedent's mental status or any possible suicidal ideations.  (J.A. 151, 161, 167).  Moreover, even though Deputy Small provided Defendant Snipes with the Decedent's notepad, she only flipped through the notepad to check it for contraband.  She did not read any of the writings it contained.  (J.A. 160-161, 167).[7]

This Court has recognized that "[i]n the absence of a previous threat of or an earlier suicide attempt, we know of no federal court in the nation ... that has concluded that official conduct in failing to prevent a suicide constitutes deliberate indifference." *Gordon v. Kidd,* 971 F.2d 1087, 1094 (4th Cir. 1992).  Moreover, "prison officials need not screen a pretrial detainee for suicidal tendencies if they have no knowledge that the prisoner is suicidal."  *Id*.  Thus, any misclassification or any failure to reclassify the Decedent while he was incarcerated at the Detention Center by Defendant Snipes does not amount to deliberate indifference because the evidence clearly demonstrates she had no knowledge or indication that the Decedent had attempted or threatened suicide in the past.  *See*, *Roberts v. City of Troy*, 773 F.2d 720, 722–25 (6th Cir. 1985) (finding that plaintiff's argument that defendants failed to provide proper screening at jail that would have shown that

---

[7]      In fact, Sergeant Snipes testified she had never seen the alleged suicide note until the Appellants' counsel showed it to her during her deposition.  (J.A. 162).

decedent pretrial detainee fit the profile of a high suicide risk in lockup requiring close monitoring was insufficient to show deliberate indifference).   Liability simply cannot be premised on a finding that Sergeant Snipes failed to act on a suicide risk of which she had no knowledge.  *Buffington v. Baltimore County*, 913 F.2d 113, 119 (4th Cir. 1990).

On appeal, the Appellants argue that a jail officer cannot "escape liability" for deliberate indifference where the evidence shows that the officer failed to verify facts that she strongly suspected to be true.   The Appellants, in fact, complain that "Sgt. Snipes does not mention in her deposition any questions she asked Deputy Small about Mr. Hearn's mental standing when receiving Mr. Hearn for booking" and that "[f]ailure to ask these questions violates 'recognized jail procedure.'"  *See*, Appellants' Brief, p. 50.  This argument lacks merit for several reasons.   First, the Appellants fail to identify any facts that Snipes strongly suspected were true but that she did not verify.   Instead, the record shows that Snipes had no knowledge of the Decedent's suicidal plans or intentions.  Second, it is entirely speculation to conclude that Snipes did not ask appropriate questions of Deputy Smalls.  Snipes was never asked in her deposition about what questions, if any, she may have asked the transporting officer.

Similarly, the Appellants are critical on appeal that Snipes did not consider the Decedent's intoxication or failure to provide an emergency contact.  These

issues do not support any finding of deliberate indifference. As an initial point, the Appellants have included no competent evidence of the Decedent's blood-alcohol content in the record. Further, the Appellants have offered no competent evidence, by lay or expert testimony, that the Decedent would have necessarily appeared intoxicated. Finally, even if the Decedent were intoxicated to the degree now claimed, there is no evidence that that should have affected Snipes' actions. And lastly, there is no evidence that the Decedent's failure to provide an emergency contact should have triggered any different response or conduct by Sergeant Snipes.

In sum, because Sergeant Snipes had no knowledge that the Decedent may have been suicidal, the Appellants have not established that she acted with deliberate indifference towards the Decedent's serious medical needs. Snipes acted appropriately by questioning the Decedent as to any suicidal thoughts he might have, and she acted appropriately based on the information known to her. The district court's summary judgment in her favor should be affirmed.

## II.     As an additional sustaining ground, the Appellees Small, Whitaker, Kirkley, and Snipes in their individual capacities are entitled to *Harlow* qualified immunity.

As an additional sustaining ground, the Appellees would be entitled to qualified immunity even if this Court finds that the facts when viewed in a light most

favorable to the Appellants support a finding that the Appellees Small, Whitaker, Kirkley, and/or Snipes were deliberately indifferent to the Decedent's serious medical needs.

The United States Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Importantly, qualified immunity has been found to protect law officers from "bad guesses in gray areas," and it ensures that they may be held personally liable only "for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Based upon the facts presented in this case, the Appellees Small, Whitaker, Kirkley, and Snipes are entitled to qualified immunity, and for that additional reason, the summary judgment entered in the district court should be affirmed.

When a court considers a qualified immunity claim, it must use an "objective reasonableness" standard. *Torchinsky v. Siwinski*, 942 F.2d 257 (4th Cir. 1991). "The very idea of reasonableness requires that courts accord interpretive latitude to official judgments." 942 F.2d at 261. "If reasonable mistakes were actionable, difficult questions of discretion would always be resolved in favor of inaction, and effective law enforcement would be lost." *Id.*

The *Torchinsky* court explained that "[t]he police must be held to standards of reasonableness, not to standards of perfection.  A society that expects police officers to provide protection must afford them in turn some protection from lawsuits."  942 F.2d at 264.

"The determination is an objective one, dependent not on the subjective beliefs of the particular officer at the scene, but instead on what a hypothetical, reasonable officer would have thought in those circumstances." *Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004).  Finally, it is important to note that "though it focuses on the objective facts, the immunity inquiry must be filtered through the lens of the officer's perceptions at the time of the incident in question." *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994).  "[U]sing this perspective limits the need for decision-makers to sort through conflicting versions of the 'actual' facts, and allows them to focus instead on what the police officer reasonably perceived." *Id.*

Qualified immunity requires a two-step process to determine if an officer is entitled to a dismissal of the action.  *Saucier v. Katz*, 533 U.S. 194 (2001).  The court must first determine "whether a constitutional right would have been violated on the facts alleged."  533 U.S. at 200.  If the facts viewed in a light most favorable to the plaintiff do not establish a constitutional violation, the inquiry ends and the plaintiff cannot prevail.  *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004).  The second prong provides that the court "must then consider whether, at the time

27

of the violation, the constitutional right was clearly established, that is, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002), *citing Saucier*, 533 U.S. at 201-202). "If the right was not clearly established at the relevant time or if a reasonable officer might not have known that his or her conduct violated that right, the officer is entitled to immunity." *Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir. 1996).

As has been previously discussed, the Appellees maintain that the Appellants have failed to establish that a constitutional violation has occurred in this case. However, even if the Court determines that a constitutional violation has occurred, the Appellees are nevertheless entitled to qualified immunity.

The Appellants have alleged that the Decedent's substantive due process rights were violated by the Appellees through what they contend was deliberate indifference to the Decedent's serious medical needs. In a general sense, a pretrial detainee's right to be free from deliberate indifference by government officials to serious medical needs, including the right to be free from deliberate indifference to a serious risk of suicide, was clearly established at the time of the Decedent's death. *See Gordon v. Kidd,* 971 F.2d 1087, 1094 (4th Cir.1992). However, the qualified immunity inquiry must focus on the specific factual situation in this case to determine whether the Appellees enjoy immune. *See Parrish*, 372 F.3d 294, 301

28

(4th Cir. 2004).  "If the right was not clearly established in the specific context of the case -- that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted -- then the law affords immunity from suit."  *Clem v. Corbeau*, 284 F.3d 543, 549 (4th Cir. 2002).  This Court has explained that the nature of the right violated must be defined "at a high level of particularity."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 250–51 (4th Cir. 1999).  "[W]hen the legality of a particular course of action is open to reasonable dispute, an officer will not be subjected to trial and liability."  *Figg v. Schroeder*, 312 F.3d 625, 636 (4th Cir. 2002).

The standard for determining whether an officer is entitled to qualified immunity is one of objective reasonableness:  "whether a reasonable officer could have believed [the conduct at issue] to be lawful, in light of clearly established law and the information the ... officers possessed."  *Anderson v. Creighton,* 483 U.S. 635, 641 (1987).  In other words, the Court must ascertain whether the Appellees' actions (or inactions) in their dealings with the Decedent made a "reasonable mistake[ ] as to the legality of [their] actions."  *Saucier*, 533 U.S. at 206.  Put differently, the question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  533 U.S. at 194–95.  Applied in this manner, the test "operates ... to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful."  533 U.S. at 206.

In the case at hand, the question at the center of the qualified immunity analysis is whether it was reasonable for the Appellees in this action to not take additional steps to protect the Decedent from committing suicide.  As previously discussed, the reasonableness of the Appellees' actions must be interpreted through the lenses of their subjective understanding of the risk presented by the Decedent at the time and not by hindsight.  *See, Parrish*, 372 F.3d at 304.  Here, the Appellees have each testified that they had no knowledge or perception that the Decedent may be suicidal, even in light of whatever cursory review they may have performed of the notepad that was found to be in the Decedent's possession.  In citing a case from the Eleventh Circuit, this Court in *Gordon* noted that "[i]n the absence of a previous threat of or an earlier attempt at suicide, [it knew] of no federal court in the nation ... that has concluded that official conduct in failing to prevent a suicide constitutes deliberate indifference."  *Gordon*, 971 F.2d at 1094, *citing Edwards v. Gilbert*, 867 F.2d 1271, 1275 (11th Cir. 1989).  Thus, given this Court's decision in *Gordon* and its progeny, especially when read in light of the Supreme Court's subsequent decision in *Farmer v. Brennan*, it is clear that each Appellee in this case would have understood that an officer must be informed about and have actual knowledge of an arrestee's or detainee's suicidal tendencies before he or she can be held liable for deliberate indifference.

Moreover, to the extent that the Court finds the Deputy Small understood the Decedent's note to be a possible "suicide note," as is alleged, an objectively reasonable officer in Small's position would believe that the questioning of the Decedent about the note and an assessment of the Decedent's demeanor would be a satisfactory response, particularly given the Decedent's ultimate explanation and calm and coherent demeanor. Therefore, Deputy Small's response to the note, even if he believed that it may potentially indicate that the Decedent was contemplating suicide, did not rise to the level of deliberate indifference in light of a reasonable officer's understanding of the controlling authority in this Circuit.

Furthermore, a reasonable officer in Sergeant Snipes' position cannot be found to be deliberately indifferent when she did not even read the note nor was told anything unusual about the Decedent that would cause her to investigate further. The Appellees Whitaker and Kirkley, who had no direct involvement with the Decedent, are also entitled to qualified immunity as their actions were objectively reasonable under the limited information they had at the time.

Finally, and perhaps most importantly, the district court concluded in this very case that the Decedent's "note is insufficient to create an inference of deliberate indifference." (J.A. 342). The district court concluded that the evidence presented failed to support a claim of deliberate indifference against each of the Appellees. If this Court were now to disagree and rule that the evidence does support a Fourteenth

Amendment claim against one or more of the Appellees, the simple fact that experienced and accomplished federal jurists do not agree on what the law requires is indicative that the law was not clearly established in September 2009. This is critical because in *Wilson v. Layne*, 526 U.S. 603 (1999), the United States Supreme Court held that "[i]f judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." 526 U.S. at 618. Likewise, this Court has held:

> Although there might be instances where a reasonable jurist, but not a reasonable official, would consider particular conduct violative of clearly established law, if a reasonable jurist would not have viewed the defendant's action as violative of clearly established law, then it necessarily follows that the reasonable officer likewise would not have viewed that conduct as violative of clearly established law.

*Hogan v. Carter*, 85 F.3d 1113, 1116 (4th Cir. 1996). *See also*, *Swanson v. Powers*, 937 F.2d 965, 968 (4th Cir. 1991) ("If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy"); *Doe ex rel. Johnson v. South Carolina Dept. of Social Services*, 597 F.3d 163, 176-177 (4th Cir. 2010).

Thus, the fact that the district court has concluded that the facts presented do not support a Fourteenth Amendment violation should in itself be sufficient to entitle the Appellees to qualified immunity. That alone is indicative that the right asserted by the Appellants in this litigation within this specific factual context was

not clearly established in 2009. And for that additional reason, the Appellees are entitled to qualified immunity, and summary judgment should at the very least be affirmed on that basis.

## <u>CONCLUSION</u>

Based on the foregoing discussion, the Appellees respectfully request that this Court affirm the Order of United States District Judge Richard Mark Gergel, entered on May 1, 2013.

The Appellees request oral argument.

Respectfully submitted,


_____s/ Andrew F. Lindemann_____
ANDREW F. LINDEMANN
JAMES M. DAVIS, JR.
DAVIDSON & LINDEMANN, P.A.
1611 Devonshire Drive
Post Office Box 8568
Columbia, South Carolina 29202
TEL: (803) 806-8222
FAX: (803) 806-8855

*Counsel for Appellees*

Columbia, South Carolina

September 3, 2013

_____

**CERTIFICATE OF SERVICE**

_____

     I hereby certify that on September 3, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

William A. McKinnon, Esquire
Jordan C. Calloway, Esquire


_____*s/ Andrew F. Lindemann*_____